UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 20-cr-187 |
| VERSUS | CHIEF JUDGE HICKS |
| EDWARD MCINTYRE | MAGISTRATE JUDGE HORNSBY |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

**Introduction**

Edward McIntyre ("Defendant") was a passenger in a parked car that was detained by Shreveport police. The officers found drugs and a gun inside the car, and Defendant admitted they belonged to him. A federal grand jury indicted Defendant for possession of a firearm by a convicted felon. Defendant filed a motion to suppress that challenged the validity of the stop. The undersigned held a hearing and issued a report and recommendation that recommended the motion to suppress be granted.

The Fifth Circuit later issued U.S. v. Flowers, 6 F.4th 651 (5th Cir. 2021), which affirmed the denial of a motion to suppress evidence found after a Terry stop of the occupants of a parked car. The court asked the parties to brief the impact, if any, of Flowers on the resolution of Defendant's motion to suppress. After reviewing the briefs, and for the reasons that follow, the undersigned continues to recommend that the motion to suppress be granted.

**The Flowers Decision**

The police officer who made the stop in Flowers was a member of a proactive unit assigned to look for suspicious activity. On the night at issue, the supervisor of the unit assigned it to an area around two streets where recent violent crimes and burglaries had occurred. The officer was turning from one of the targeted streets onto the other when he saw a silver Cadillac parked at the end of a small parking lot connected to an open convenience store.

It was dark outside at 8:30 p.m. in February. There were two men in the front seat of the Cadillac. The officer watched the car "for approximately 10 to 15 seconds" and noticed the men did not appear to be exiting the car or patronizing the store. He decided to conduct a field interview, whereupon he and five or six other officers, in separate cars, converged on the car with their blue lights activated. The officer said it would have been impossible for the car to leave because of the way the officers parked their cars around it. The district court found that there was reasonable suspicion under Terry to make such a seizure.

The parties in Flowers debated when a seizure occurred. The panel majority assumed *arguendo* that the men in the car were "seized" when the police cars surrounded them. (The dissent believed that was "no doubt" a seizure.) The Fifth Circuit construed the evidence in the light most favorable to the prevailing party, the Government in that case, and deferred to the credibility determinations made by the trial court.

The panel held (2-1) that the facts found by the district court amounted to reasonable suspicion. Those facts included that police were patrolling the exact two streets where

violent crimes had recently occurred, the officer had ten years of law enforcement experience and college degrees in criminal justice fields, convenience stores are known to be frequent targets of crime, the neighborhood was so unsavory that it had a special task force assigned to it, and the car was parked suspiciously close to the store in a manner that suggested its occupants might be casing the store or preparing to prey on patrons. A dissenting judge argued that, looking at the totality of the circumstances, there was no reasonable suspicion. For citizens to become suspects, she reasoned, they must do more than merely exist in an unsavory neighborhood.

**Discussion**

"Every case that turns on reasonable suspicion is intensely fact specific." Flowers, 6 F.4th at 656. The facts of this case, as established at the hearing, were reviewed in detail in the report and recommendation. They boil down to (1) Defendant was in a high-crime neighborhood and (2) an experienced officer saw what "appeared to be a hand-to-hand transaction" about which no details were provided.

Officer Glass-Bradley testified that he was with the street level interdiction unit on a directed patrol, meaning a supervisor assigned the unit to a high crime area, in the Queensborough neighborhood. Glass-Bradley said he had investigated "shooting, assaults, domestics, narcotics" in the neighborhood in the past. Asked to characterize Queensborough, he said "It's a high-crime area." Tr. 6-7. Another officer who participated in the operation offered similar testimony that, "It's not a very safe part of town." Tr. 37. But the officers had not received any reports that night of a burglary or drug dealing. Tr. 51.

Officer Glass-Bradley was asked about his observation of Defendant and testified as follows:

> Q: Now, around 10:00 p.m. on June 13, 2019, did you make any observations while operating in the area of Darien Street?
>
> A: Yes.
>
> Q: What did you see?
>
> A: I was traveling westbound on Darien, and I observed a black male standing outside the driver's side door of a white Saturn.
>
> Q: How could you tell it was a man standing in the street?
>
> A: I was - -
>
> Q: How far away? - -
>
> A: About - -
>
> Q: - - from him - -
>
> A: - - five feet.
>
> Q: All right. And what did you see when you approached that man and the vehicle, that white Saturn?
>
> A: There was a - - *what appeared to be a hand-to-hand transaction* between him and the female occupant.
>
> Q. Are drugs commonly transacted that way in your experience?
>
> A. Yes.

Tr. 9 (emphasis added).

Glass-Bradley said that he had observed "over 300" hand-to-hand transactions in Shreveport. Tr. 10. He testified that he had worked undercover and bought or sold drugs "over 300" times. Tr. 11.

Page 4 of 11

Officer Glass-Bradley said the man, Defendant, left the Saturn and began walking down the sidewalk to another car (a Mercedes) that was parked about 20 feet away. As Defendant was walking, Glass-Bradley radioed to his colleagues that he saw a hand-to-hand, and he described the location of the two vehicles and that a male was walking on the sidewalk. The other officers were nearby and responded within 8 or 9 seconds, by which time Defendant had entered the passenger side of the other car. The colleagues detained the occupants of the Mercedes in which Defendant was sitting; Glass-Bradley focused his attention on the female in the Saturn. Tr. 12-18. He said that after he turned on his lights the Saturn was not free to leave. Tr. 29.

By the time Glass-Bradley turned around and pulled up behind the Saturn, the other officers were arriving to check the Mercedes. Tr. 26-28. They pulled their car alongside the Mercedes. Tr. 40. One of the officers who stopped the Mercedes said that once they received Glass-Bradley's radio call that he saw an alleged hand-to-hand, "we were going to stop" the Mercedes and the occupants were not free to leave. Tr. 50-55. The officer who was driving could not recall this particular stop, but he testified, "If we made a stop, then I turned on my lights." Tr. 60, 63. The Government conceded in its post-hearing memorandum that this testimony precludes characterizing this encounter as consensual. Doc. 29, pg. 2 n. 1. The undersigned finds that the occupants of the Mercedes were seized when the two officers pulled up beside their car with police lights on and no intention to allow them to leave.

Glass-Bradley approached the Saturn, where he smelled marijuana. The female driver was not cooperative and had to be removed from the car. Glass-Bradley found three

Page 5 of 11

bags of marijuana on her. Tr. 17-21. The facts show that the other officers had already seized the Mercedes and its occupants before this evidence developed. The Government does not argue that these post-seizure facts help provide reasonable suspicion to seize Defendant; reasonable suspicion must be based on facts known at the time of the stop. Kansas v. Glover, 140 S. Ct. 1183, 1188 (2020) ("we turn to whether the facts known to Deputy Mehrer at the time of the stop gave rise to reasonable suspicion"); Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty., 124 S. Ct. 2451, 2458 (2004) (to make a Terry stop, the officer's action must be "justified at its inception"). The officers who detained the Mercedes found Plaintiff holding several baggies of crack with a firearm at his feet. Defendant admitted post-Miranda that the drugs and gun were his. Tr. 46-50.

The Government stated in its objections that Officer Glass-Bradley "adopted that a 'small' item inside a 'closed fist' was 'transacted' from one hand being placed 'into' another." Doc. 32, pg. 2. The testimony cited by the Government, Tr, 33:1-13, shows that the officer said that a hand-to-hand would be suspicious to him even if he could not see an item transferred, but it does not appear that he adopted that there was an actual transaction of an item in this case. This discussion began during cross-examination, when defense counsel asked Glass-Bradley if he had seen anything "unlawful" as he was driving by Defendant. The officer responded, "No." Tr. 23. On redirect by the Government, the following exchange took place:

> Q: I just want to drill down, because Ms. Martin used the word "unlawful," meaning you couldn't see anything unlawful being transacted from one hand to the other; is that correct?
>
> A: Yes.

> Q: Just like this. For the record, I'm taking my left hand and putting it into my right.
>
> While you might not have been able to see contraband, meaning that it's unlawful, did seeing that action show you that it was suspicious?
>
> A: Yes, it was - -
>
> Q: And just to - -
>
> A: Reasonably suspicious … that a transaction had just taken place.

The record contains no evidence that the officer saw an item exchanged or that he adopted the suggestion that there was a "small item" exchanged. He did say that he was suspicious of the hand activity despite not seeing any item change hands.

**Discussion**

Flowers recognized that every reasonable suspicion decision is intensely fact specific. The court invited the parties to brief the effect of Flowers because of its apparently low threshold for finding reasonable suspicion to detain the occupants of a car but, in the end, its facts are quite different from those in this case and do not compel a result, either way, with respect to the motion to suppress.

Flowers involved a convenience store located in an area so affected by crime that a task force was assigned to patrol two particular streets; this case arose in a residential neighborhood that was generically described as a high-crime area. The car in Flowers was perceived to be parked in a suspicious out-of-sight location; the events in this case occurred on a residential street and there was no testimony that there was anything suspicious about the nature and location of the cars involved. Flowers noted that the officer was no novice,

possessing degrees in criminal justice areas and with ten years of law enforcement experience. The officer in this case had witnessed or participated in several drug transactions that were completed in a hand-to-hand fashion, but he agreed that he did not see the nature of the item exchanged and that it could have been an innocent exchange. In the end, an experienced officer saw what he thought was a hand-to-hand exchange of an unknown item in a neighborhood generically described as a high-crime area. There were zero other factors articulated that made the exchange suspicious of drug dealing or other criminal activity.

The original report and recommendation reviewed several cases in which hand-to-hand transactions were involved and reasonable suspicion was at issue. Many of those cases involved additional factors that brought the observed facts to the level of reasonable suspicion. Among those decisions was U.S. v. Drakeford, 992 F.3d 255 (4th Cir. 2021), which reversed a district court that denied a motion to suppress under circumstances that involved a hand-to-hand transaction and arguably more suspicious circumstances than those presented in this case. There was testimony about a handshake that was perceived to be a hand-to-hand transaction, but the officer did not witness any drugs or money change hands, and he did not provide any details about the handshake that allowed the court to view it as suspicious. This was so despite the experience of the officer involved. The undersigned finds the analysis in that decision, which is based on facts similar to those presented here, to be persuasive.

**Conclusion**

Every case of this nature must turn on its particular facts. The original report and recommendation cited and discussed a number of decisions, including Drakeford, that arose in a similar context involving hand-to-hand transactions. None of those decisions presented the same facts as this case, but they are illustrative of the application of the reasonable suspicion requirement in similar settings. There does not appear to be any controlling authority, including Flowers, that compels a particular result in this case.

Worth noting is that Flowers affirmed the denial of a motion to suppress, which required the appellate court to defer to the findings of the district court and view the evidence in the light most favorable to the prevailing party. Appellate courts also affirm a suppression ruling if there is any reasonable view of the evidence to support it. U.S. v. Massi, 761 F.3d 512, 520 (5th Cir. 2014). This case is being decided in the first instance, based on the trial court's firsthand view of the facts, and "[t]he government has the burden of proving the specific and articulable facts that support the reasonableness of the suspicion." U.S. v. Hill, 752 F.3d 1029, 1033 (5th Cir. 2014). Other than that burden, there is no deference due either side at this stage of the case.

The undersigned has reviewed Terry, Flowers, and the several other cited decisions and again concludes that a conscientious application of the constitutional principles to the facts presented in this case warrant a finding that, under the totality of the circumstances, the Government has not met its burden of showing that the officer possessed the objective, particularized reasonable suspicion required to justify the seizure of the car in which Defendant was a passenger. A suspected hand-to-hand transaction of an unseen item in a

high-crime residential neighborhood, even by an experienced officer, is, without more, not enough to warrant a Terry seizure. To hold otherwise is to allow police officers in high crime neighborhoods, which are unfortunately too common, to detain anyone who engages in so much as a handshake.

There have been and will be cases in which an officer witnesses a hand-to-hand transaction and articulates facts about the setting and the actions of the participants that amount to reasonable suspicion to warrant a seizure that does not run afoul of the Fourth Amendment. Those facts are lacking here, so this is not such a case. The evidence found as a result of the seizure must be suppressed.

Accordingly,

It is again recommended that Defendant's Motion to Suppress (Doc. 16) be granted, and the drugs, gun, and Defendant's statements be suppressed from use at trial.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of September, 2021.

Mark L. Hornsby
U.S. Magistrate Judge